IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK WAYNE SPRINKLE,

            Plaintiff,                No. CIV S-02-1563 LKK EFB P

        vs.

LEON ROBINSON, et al.,

            Defendants.       <u>ORDER AND</u>
                                 <u>FINDINGS AND RECOMMENDATIONS</u>
_____/

      Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983.  He alleges that defendants violated his First Amendment right of access to the courts by denying him photocopies of documents he sought to attach as exhibits to a habeas petition he filed in state court.  Currently before this court are plaintiff's and defendants' cross-motions for summary judgment in this § 1983 case.  Plaintiff also requests sanctions, moves to strike defendants' summary judgment motion, and moves to "quash" defendants' opposition to plaintiff's motion for summary judgment.

**I. Procedural History**

      Plaintiff initiated this action by filing a verified complaint on July 23, 2002.  Defendants moved to dismiss and that motion was denied by the District Court on March 22, 2004.

////

1

Defendants subsequently moved for summary judgment on May 10, 2005.  On March 2, 2006, the previously assigned magistrate judge issued findings and recommendations recommending that defendants' motion for summary judgment be granted.  Plaintiff filed objections on March 20, 2006, and on March 31, 2006, the district judge declined to adopt the findings and recommendations, stating:

> The magistrate judge found that a pro se habeas corpus petitioner is not required to provide exhibits or other supporting documents with his initial petition and thus that defendants' refusal to copy the exhibits did not cause "actual injury" to plaintiff's constitutional right to access the court.  Findings and Recommendations filed on March 1, 2006 at 6-7.

*      *      *

> The court cannot agree with this conclusion at this time.  First, it is not clear to the court that the relevant question is whether the prisoner was required to provide the exhibits.  Rather, *the appropriate question appears to be whether the failure to allow the plaintiff to provide additional evidence in support of his habeas petition resulted in the state court denying the petition on the grounds that petitioner "made no offer of proof by way of additional evidence" to support his argument that the findings of the jury were unreasonable.*  It does not follow that because the prisoner was not required to attach supporting documents that he did not have such a right.  This becomes significant in light of the finding by the Superior Court which denied the habeas on the ground that no additional evidence was proffered.

*      *      *

> Based on the evidence tendered, it appears that there remains a disputed fact that would defeat summary judgment.  The court may need to know what the contents of the exhibits were, and if there was another opportunity given in the judicial proceedings to provide the documents before finding that the failure to provide them with the petition for habeas corpus was not the cause for the denial.

*      *      *

> For the reasons set forth above, the court DECLINES to adopt the magistrate judge's March 1, 2006 findings and recommendations and REMANDS the case to the magistrate judge for further proceedings consistent with this order.

March 31, 2006 Order (emphasis added).

Following the district judge's order declining to adopt the findings and recommendations, the magistrate judge denied defendants' motion for summary judgment by order filed August 18, 2006.  That order granted each party thirty days within which to file a new motion for summary

2

1    judgment accompanied by all evidence necessary to address the issue.  Defendants filed their

2    motion for summary judgment on September 26, 2006.  Plaintiff filed his opposition to that

3    motion together with his own motion for summary judgment on October 17, 2006.  Defendants

4    filed their reply to plaintiff's opposition together with their opposition to plaintiff's motion on

5    October 20, 2006.  Those motions are currently before the court.  The case was reassigned to the

6    undersigned magistrate judge on October 6, 2006.

7    **II.  Plaintiff's Motions to Strike, Quash and for Sanctions**

8           Plaintiff moves to strike defendants' motion for summary judgment on the basis that it

9    has been previously presented, ruled upon, and denied.  He mistakenly asserts that defendants'

10   new motion is simply "asking for a new ruling on the exact same issues without proffering any

11   new evidence what-so-ever."  Mot. to Strike, filed October 17, 2006, at 4.  To the contrary,

12   defendants and plaintiff were granted thirty days for the very purpose of filing new motions for

13   summary judgment that focus on the relevant issue.  Defendants were permitted to refile a

14   motion for summary judgment based on the district court's findings that the record was

15   insufficient to grant defendants' earlier motion.  To the extent plaintiff argues that the new

16   motion in reality seeks reconsideration of a prior legal determination this would, at most, affect

17   the standard applicable to the motion but would not provide a reason for striking the motion.

18   Similarly, plaintiff's motion to quash defendants' opposition to plaintiff's motion for summary

19   judgment must be denied for the same reasons.  The court notes that this motion to quash

20   consists of argument responding to the defendants' opposition brief.  Accordingly, the court

21   construes this document as plaintiff's reply brief.

22          For the foregoing reasons, plaintiff's motions to strike and to quash are denied.

23          Plaintiff moves for sanctions against defendants under Rule 11 of the Federal Rules of

24   Civil Procedure, arguing that defendants "deliberately mislead" the court.  He claims that

25   defendants' second summary judgment motion is almost identical to the previous motion to

26   dismiss and identifies the same issues almost verbatim, and was filed as a delaying tactic.  As

3

1  discussed above, plaintiff ignores the fact that the parties were expressly directed to rebrief the

2  motions so as to address the issue identified by the district court.  Defendant's second motion has

3  done so and in no way violates Rule 11.  Accordingly, plaintiff's motion for sanctions is denied.

4  **III.   Summary Judgment Motions**

5      **A.   <u>Statement of Facts</u>**[1]

6      At all times relevant to this action, plaintiff was a state prisoner in the custody of the

7  California Department of Corrections and Rehabilitation (CDCR) at Mule Creek State Prison

8  (MCSP) in Ione, California.  Plaintiff's Statement of Undisputed Facts (PSUF) ¶ 1.  Defendant

9  Robinson was a Senior Librarian and defendant Pierce was a Supervisor of Academic Education

10  and defendant Robinson's supervisor at MCSP. PSUF ¶¶ 2, 3.

11      Plaintiff was tried on multiple felony charges involving sexual offenses against three girls

12  under the age of 14 with whom he was acquainted.  Defs.' Mot. for Summ. J., Ex. 30.  The case

13  turned on questions of credibility.  *Id.*  Plaintiff was convicted on some charges, acquitted of

14  others, and sentenced to 16 years to life in prison.  *Id.*  Plaintiff began serving his prison sentence

15  on October 8, 1996, and was transferred to MCSP on April 15, 1999, where he has since been

16  continuously confined.  PSUF ¶ 40.

17      On November 5, 1999, plaintiff prepared to challenge his conviction by submitting  to

18  Cova, the B-Yard Librarian at MCSP, a state application for a writ of habeas corpus with

19  supporting documents with a request that they be copied.  PSUF ¶ 41.  Cova submitted the

20  documents to the Senior Librarian, defendant Robinson, who took it upon himself to decide that

21  the documents were not required under state rules of court and refused to copy them.  Defs.'

22  Mot. for Summ. J., at 6; PSUF ¶¶ 41, 46.  Defendants estimate that plaintiff requested copying of

23  approximately 900 pages.  Defs.' Mot. for Summ. J., at 6.  The record shows that on December

24  14, 1999, plaintiff requested three sets of photocopies of 81 pages of documents and two sets of

25

26      [1]  Unless otherwise specified, the facts recounted herein are undisputed by the parties.

4

1   copies of 437 pages of documents, for a total cost of $111.70, together with a signed Trust

2   Account Withdrawal Order.  Comp., Ex. 2.

3            At the time plaintiff filed his petition in superior court, California Rules of Court Rule 56

4   provided that "a petition that seeks review of a trial court ruling *must be* accompanied by an

5   adequate record, including copies of ... all documents and exhibits submitted to the trial court

6   supporting and opposing petitioner's position," "any other documents or portions of documents

7   submitted to the trial court that are necessary for a complete understanding of the case and the

8   ruling under review," and "a reporter's transcript of the oral proceedings that resulted in the

9   ruling under review."  Rule 56,  California Rules of Court (emphasis added).[2]

10           Plaintiff had a copy made of the petition, without his supporting documents, and timely

11  filed it with the Mendocino County Superior Court.  PSUF ¶ 47.  On January 5, 2000, the

12  Mendocino County Superior Court filed its decision denying plaintiff's petition for writ of

13  habeas corpus, citing lack of supporting documentation as grounds for denial on as many as three

14  issues.  PSUF ¶¶ 48, 49; Defs.' Mot. for Summ. J., Ex. 32.

15           Plaintiff sought review by submitting, on January 15, 2000, the superior court denial of

16  his writ to the First Appellate District Court for the California Courts of Appeal.  Plaintiff's

17  Verified Complaint (Comp.), at 15-16.  Plaintiff included correspondence to that court

18  explaining the deficiency and lack of exhibits, and asked the court for relief and an order to

19  direct the institution of custody to copy the exhibits referred to in the writ petition.  *Id*., at 15-16.

20  On January 25, 2000, the court clerk for the First Appellate District Court returned plaintiff's

21  state habeas petition, requesting plaintiff to attach the missing exhibits that defendants refused to

22  copy, before the court would accept the petition and assign it a docket number.  Court records

23  show that plaintiff's habeas petition was denied by the First Appellate District Court on April 13,

24

25           [2]  California Rule of Court Rule 56 was renumbered as Rule 8.490 and amended effective
    January 1, 2007.  The amendment did not alter the substantive content of the rule as quoted
26  above in any significant way.

2000.[3]

## B.  <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita*

---

[3]  *See* http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=1&doc_id=41550&doc_no=A089658 (accessed August 3, 2007).  A court may take judicial notice of court records.  *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).  *See also* Pl.'s Opp'n to Defs.' Mot. to Dism., Ex. 1.

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita,* 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may reasonably be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

On February 7, 2003, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

////

////

**C.  <u>Right of Access to the Courts</u>**

Under the First and Fourteenth Amendments to the Constitution, state prisoners have a right of access to the courts. *Lewis v. Casey,* 518 U.S. 343, 346 (1996).  "[A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty. *Id.* at 384 (quoting *Hatfield v. Bailleaux,* 290 F.2d 632, 637 (9th Cir.1961)). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817 (1977).

**1.  <u>California Rules of Court</u>**

The judicial council form MC-275, on which plaintiff filed his state habeas petition, instructs petitioners, "if available, attach declarations, relevant records, transcripts, or other documents supporting your claim."  States must provide trial records to inmates unable to buy them. *Griffin v. Illinois*, 351 U.S. 12, 20 (1956), and must "assure the indigent defendant an adequate opportunity to present his claims fairly." *Ross v. Moffitt*, 417 U.S. at 616.  Defendants contend that according to California Rules of Court, Rule 60[4], it is not necessary to attach supporting documentation to a petition for a writ of habeas corpus.  Defendants argue that Rule 60(a) permits a "pre [sic] se petitioner confined in state penal institution to file habeas petition using judicial council form MC-275 without attached exhibits," and a "pro se petitioner need not comply with the provision of rule 56 that prescribe the form and content of a petition . . . ."  This reading of Rules 56 and 60 is incomplete and does not address the question of whether petitioner's right to support his claim with necessary evidence was impeded by the refusal to copy his exhibits.

---

[4]  Rule 60 was renumbered as Rule 8.380 and amended effective January 1, 2007. Nowhere in the body of former Rule 60 is it mentioned that supporting documents are not necessary to the court in reviewing a petition for a writ of habeas corpus.

Prior to amendment and after the inception of this litigation, Rule 60(a) stated, in relevant part:

> (2) A petition on form MC-275 need not comply with the provisions of rule 56 that prescribe the form and content of a petition and require the petition to be accompanied by points and authorities.

However, California Rule of Court Rule 56(c)[5], referring to contents of supporting documents, provides in relevant part:

> (1) A petition that seeks review of a trial court ruling *must be accompanied by an adequate record*, including copies of:
> (A) The ruling from which the petition seeks relief;
> (B) All documents and exhibits submitted to the trial court supporting and opposing the petitioner's position;
> (C) Any other documents or portions of documents submitted to the trial court that are necessary for a complete understanding of the case and the ruling under review; and
> (D) A reporter's transcript of the oral proceedings that resulted in the ruling under review.
>
> *            *            *
>
> (5) *If the petitioner does not submit the required record or explanations or does not present facts sufficient to excuse the failure to submit them, the court may summarily deny a stay request, the petition, or both.*

Rule 56(c), California Rule of Court (emphasis added).  Thus, while a petitioner may choose to submit a petition without supporting documentation, Rule 60(a), the consequence of doing so is for the state court to summarily deny the petition.  Rule 56(c).  Read together, Rules 56 and 60 in fact *require* a petitioner to submit the required record, including transcripts and all documents submitted to the trial court if the petitioner is to have any chance of having the claim heard. Rule 56(c)(5).  The listing of the documents from which an "adequate record" is made is not exhaustive.  Certainly, any documents relied upon in the petition would necessarily be required as attachments.  Defendants provide no authority or persuasive reasoning to support a contrary interpretation.  On the contrary, the California Rules of Court mandate the inclusion of the very

---

[5] California Rule of Court Rule 56 was renumbered as Rule 8.490 and amended effective January 1, 2007.  The amendment did not alter the substantive content of the rule as quoted above in any significant way.

1  documents plaintiff sought to attach as exhibits yet were denied by defendants unless the

2  petitioner was prepared to have the state court summarily deny an unsupported petition.

3       Defendants further contend that defendants' actions comported with prison policy.

4  California Code of Regulations, Title 15 § 3162, regarding "Legal Forms and Duplicating

5  Services," states in relevant part that:

6       [l]egal duplicating services for an inmate shall be restricted (provided such
restrictions will not interfere with the inmate's access to the courts) when that

7  inmate abuses the service to such an extent that other inmates are deprived of the
services or it results in an unnecessary expense to the state.  The authority to

8  place such restriction shall not be delegated to staff below the level of
correctional captain.

9

10  Defendant has not shown how the refusal of plaintiff's request here is justified under this

11  regulation.  The Ninth Circuit Court of Appeal has held that an inmate's constitutional rights,

12  including the right of access to the courts, may be violated by the arbitrary and selective

13  enforcement of otherwise valid policies.  For example, in *Baumann v. Arizona Dept. Of

14  Corrections*, 745 F.2d 841, 845 (9th Cir. 1985), the state denied an inmate a work furlough on

15  the grounds that the policy establishing his eligibility was not part of a published regulation as

16  required by state law.  The court held that, although the publication requirement was otherwise

17  valid, "the state cannot arbitrarily deny privileges based on the lack of regulations if it grants

18  privileges under unfiled regulation to other prisoners."  *Id*.  The court held that such selective

19  enforcement of regulations could constitute a violation of the inmate's due process rights if it

20  resulted in a deprivation of a prisoner's liberty interests.  *Id*.  Similarly, in *Gluth v. Kangas*, 951

21  F.2d 1504, 1508 (9th Cir. 1991), the court held that arbitrarily denying access to a prison library

22  despite space availability could constitute a violation of the right of access to the courts, even if

23  the regulations governing access were arguably facially valid.[6]  In more general terms, "practices

24

25     [6] Other circuits have looked with similar disfavor on the arbitrary enforcement of valid
regulations.  *See, e.g.*, *Reed v. Faulkner*, 842 F.2d 960, 964 (7th Cir. 1988) (holding selective

26  enforcement of hair length rules against some groups asserting religious exemption but not

1   that unjustifiably obstruct the availability of professional representation or other aspects of the

2   right of access to the courts are invalid." *Leed v. Watson*, 630 F.2d 674, 676 (9th Cir. 1980).

3        Defendants' offered justification under the regulation for refusing to photocopy

4   plaintiff's exhibits is that a defendant concluded that the documents were not needed by the

5   reviewing court.  This was plainly in contradiction to the California Rules of Court, as stated

6   above, as well as settled case law in state as well as federal court.  *See Ex Parte Hull*, 312 U.S.

7   546 (1941);  *In re Harrell*, 2 Cal.3d 675, 689-90 (1970)(holding that a state court to which an

8   application for relief is directed has the exclusive power to determine whether that application is

9   properly filed or states legal grounds for relief).

10            **2.  *Harbury* Elements**

11        Where a prisoner asserts a backward-looking denial of access claim – one, as here,

12   seeking a remedy for a lost opportunity to present a legal claim – he must show: (1) the loss of a

13   "nonfrivolous" or "arguable" underlying claim; (2) the official acts frustrating the litigation; and

14   (3) a remedy that may be awarded as recompense but that is not otherwise available in a future

15   suit. *See Christopher v. Harbury,* 536 U.S. 403, 413-14 (2002).

16        The first *Harbury* element, requiring the loss of a nonfrivolous underlying claim, goes to

17   the plaintiff's standing.  To establish standing to assert a claim of denial of access to the courts,

18   an inmate must show "actual injury."  *Lewis,* 518 U.S. at 351.  In order to establish actual injury,

19   the inmate must demonstrate that official acts or omissions "hindered his efforts to pursue a

20   [nonfrivolous] legal claim."  *Id.* at 351, 353.

21        Here, defendant Robinson's refusal to provide plaintiff with photocopies of the documents

22   he sought to attach to his state habeas petition hindered his ability to properly file a complete

23   habeas petition.  The consequences, as expressly provided in Rule 56(c), were entirely

24   predictable.

25   _____

26   others could constitute violation of equal protection, despite the general validity of the rules).

1  The state court denied the petition in part due to lack of supporting documentation and because

2  petitioner "made no offer of proof by way of additional evidence."  Defs.' Mot. for Summ. J., Ex.

3  32.

4          Defendants argue that "[a]ssuming defendants did err, however, their refusal did not cause

5  [plaintiff] any harm, because the documents would not have changed the outcome of his petition."

6  This argument misunderstands both the nature of the right protected by *Bounds* and the "actual

7  injury" requirement.  To establish actual injury, a plaintiff "need not show, *ex post*, that he would

8  have been successful on the merits had his claim been considered." *Allen v. Sakai,* 48 F.3d 1082,

9  1085 (9th Cir.1994).  To hold otherwise "would permit prison officials to substitute their

10 judgment for the courts' and to interfere with a prisoner's right to access on the chance that the

11 prisoner's claim would eventually be deemed frivolous."  *Id.*  A plaintiff need only show that the

12 claims he sought to pursue were "non-frivolous." *Phillips v. Hust*, 477 F.3d 1070, 1083 (citing

13 *Lewis v. Casey*, 518 U.S. 343, 353 (1996) (An arguable (though not yet established) claim [is]

14 something of value.)).  In this case, plaintiff was seeking to attack his conviction, which is

15 precisely the sort of litigation addressed in *Lewis*.  Accordingly, plaintiff's petition for writ of

16 habeas corpus was not facially frivolous.

17         Under *Harbury's* second element, plaintiff must show that defendant Robinson's denial of

18 photocopies frustrated his attempt to press his claim in the state superior court.  In other words, as

19 in any § 1983 case, plaintiff must show that the alleged violation of his rights was proximately

20 caused by defendant, the state actor.  *See Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir.1991)

21 (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).  The

22 touchstone of proximate cause in a § 1983 action is foreseeability.  *See Tahoe-Sierra Pres.*

23 *Council, Inc. v. Tahoe Regional Planning Agency,* 216 F.3d 764, 784-85 (9th Cir.2000) (citing

24 *Arnold v. IBM Corp.,* 637 F.2d 1350, 1355 (9th Cir.1981)).

25         Defendants argue that plaintiff cannot show that defendants' actions caused the denial of

26 plaintiff's state habeas petition.  But it is not the ultimate success or lack of success of plaintiff's

1    habeas petition that is at issue.  He was deprived of an opportunity to have the merits of his claim

2    tested at all.  As stated above, a plaintiff "need not show, *ex post*, that he would have been

3    successful on the merits had his claim been considered." *Sakai,* 48 F.3d at 1085.  Rather, it is the

4    ability to bring the litigation in the first instance.  The Constitution requires that prison officials

5    make it possible for inmates to prepare, file, and serve pleadings and other documents essential

6    for pleading their causes. *Lewis,* 518 U.S. at 346.  Of course, the Constitution does not demand

7    that any means of preparation selected by the inmate be made available, so long as the inmate has

8    some means of preparing documents that comply with the rules of the court in which his case is

9    pending.  Thus, inmates have no right to a typewriter to prepare legal documents where court

10   rules permit pro se litigants to hand-write their pleadings. *Lindquist v. Idaho State Bd. of*

11   *Corrections,* 776 F.2d 851, 858 (9th Cir.1985) (citing *Twyman v. Crisp,* 584 F.2d 352, 358 (10th

12   Cir. 1978)).  Nevertheless, it remains true that *some* means of preparing legal documents,

13   including a means of photocopying them where required, must be made available.

14       Defendants argue that "if the Mendocino County Superior Court denied [plaintiff's]

15   habeas petition because sworn affidavits referenced in the petition were not included as exhibits,

16   [plaintiff] should have challenged the court's decision by taking his habeas petition to a higher

17   court for review.  [Plaintiff] did not, however, seek such review." Defs.' Mot. for Summ. J., at

18   23-24.  However, plaintiff has sworn in his verified complaint that he did seek review by the First

19   Appellate District Court for the California Courts of Appeal on January 15, 2000.  Comp., at 15-

20   16.  On January 25, 2000, the court clerk for the First Appellate District Court returned plaintiff's

21   state habeas petition, requesting plaintiff to attach the missing exhibits that defendants refused to

22   copy, before the court would accept the petition and assign it a docket number.  Court records

23   show that plaintiff's habeas petition was denied by the First Appellate District Court on April 13,

24   ////

25   ////

26   ////

1    2000.[7]   Again, because of the decision to refuse plaintiff the copies of his exhibits, his access to

2    the courts to consider the merits of his petition was effectively blocked.

3        Morever, regardless of plaintiff seeking relief in the First Appellate District Court and

4    regardless of its denial of the habeas relief plaintiff sought, there is no duty to mitigate in an

5    access to courts claim.  To impose such a duty would work an absurd result of mandating

6    reviewing courts to guess at the outcome had the case been tried in the appropriate lower court.  If

7    anything, this further attempt on plaintiff's part to seek out relief and yet be denied relief on the

8    basis that his appellate petition was unsupported by documents necessary to its review only serves

9    to bolster plaintiff's claim.

10       As noted, defendants only offered justification for denying plaintiff the photocopies he

11    requested for attachment with his petition is the clearly wrong assumption that "the reviewing

12    court did not need the exhibits and other supporting documents."  Moreover, it was entirely

13    foreseeable that this arbitrary denial would obstruct plaintiff's ability to obtain a decision on the

14    merits of the claims presented in his petition.  Defendants' refusal to furnish to plaintiff the

15    photocopies that he requested, quite predictably interfered with his ability to properly file a

16    complete petition for writ of habeas corpus and thereby violated his right of access to the courts.

17       That defendants were unaware of the plain language of the California Rules of Court does

18    not affect this result.  It was entirely foreseeable that denying plaintiff his requested photocopies

19    would interfere with plaintiff's ability to file a completed petition for writ of habeas corpus in *any*

20    court.

21       Plaintiff also satisfies *Harbury*'s third requirement that the plaintiff have no other remedy

22    than the relief available in his denial of access suit.  Unlike the plaintiff in *Harbury,* plaintiff has

23    no independent tort cause of action against defendants for the violation of his rights.  Moreover,

24    even if state law permitted plaintiff to file a successive post-conviction relief suit, such a suit

25

26         [7] A court may take judicial notice of court records.  *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

1  could not provide the relief plaintiff seeks here, namely compensation for the expense and effort

2  of the earlier litigation, for which any hope of vindication, however slim, was lost as a result of

3  the incomplete filing of his petition for writ of habeas corpus.

4     For these reasons, defendant's arbitrary denial of photocopies violated plaintiff's right of

5  access to the courts.

6     **D.  <u>Qualified Immunity</u>**

7     Defendants contend that, even if their actions amounted to a violation of plaintiff's rights,

8  the right was not clearly established, and they are therefore entitled to qualified immunity.

9  Qualified immunity protects "government officials . . . from liability for civil damages insofar as

10 their conduct does not violate clearly established statutory or constitutional rights of which a

11 reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In

12 *Saucier v. Katz,* the Supreme Court set out a two-step inquiry in determining whether an official

13 has qualified immunity. 533 U.S. 194, 201 (2001).  First, "taken in the light most favorable to the

14 party asserting the injury, do the facts show the officer's conduct violated a constitutional right?"

15 *Id*.  Second, the court must "ask whether the right was clearly established." *Id.*  "The relevant,

16 dispositive inquiry in determining whether a right is clearly established is whether it would be

17 clear to a reasonable officer his conduct was unlawful in the situation he confronted."  *Id.*

18 Whether the right at issue in a claim of qualified immunity is clearly established is judged as of

19 the date of the incident alleged and is a pure question of law.

20    Here, as discussed above, the refusal to copy plaintiff's exhibits needed for attachments to

21 his petition violated his right of access to the courts, thus satisfying *Saucier's* first prong.  The

22 second prong is whether it was clearly established that the right of access to the courts necessarily

23 includes the right to submit evidence required under the court rules.  Defendants argue that this

24 was not clearly established in this instance because none of the documents plaintiff sought to

25 attach to his habeas petition would have made a difference, and defendants acted in accordance

26 with prison policy and the California Rules of Court.

1     In *Saucier,* the Supreme Court held that the "clearly established" inquiry "must be

2  undertaken in light of the specific context of the case." 533 U.S. at 201.  When "various courts

3  have agreed that certain conduct is a constitutional violation under facts not distinguishable in a

4  fair way from the facts presented in the case at hand, the officer would not be entitled to qualified

5  immunity." *Id.* at 202-03.  Here, faced with the Supreme Court's decision in *Lewis* and *Bounds,*

6  and numerous prior and subsequent cases, a reasonable officer would know that refusing to

7  provide access to equipment and supplies needed in order "to prepare, serve and file" court

8  documents, including required supporting documentary evidence, would result in prisoners'

9  claims being "dismissed for failure to satisfy ... technical requirements" or would otherwise

10  frustrate prisoners' litigation efforts.  *See, e.g., Lewis,* 518 U.S. at 351, 384.  Indeed, as discussed

11  above, it was entirely predictable under the applicable court rules that failure to include with the

12  petition the supporting exhibits would result in a summary denial of the petition.  Finally, Ninth

13  Circuit case law and the law of other circuits holds that prison rules may not be enforced

14  arbitrarily or selectively in such a way as to violate prisoners' constitutional or statutory rights,

15  including the right of access to the courts. *Phillips v. Hust*, 477 F.3d 1070 (2007)(citing *Gluth,*

16  951 F.2d at 1508; *Baumann,* 754 F.2d at 845; *Reed,* 842 F.2d at 964).  Thus, both the right of

17  access to the courts and the right not to be subjected to arbitrary and selective enforcement of

18  prison regulations were clearly established at the time of defendant's action.

19     The fact that no case has held specifically that prison officials must provide photocopies to

20  inmates seeking to include exhibits with habeas petitions does not render it reasonable to deny

21  photocopies of documents requested copied when a law librarian subjectively disputes the

22  importance and relevance of some of them to the issues raised in a petition.  Rule 56(c) of the

23  California Rules of Court plainly required the exhibits plaintiff requested to have copied, which

24  included portions of trial transcripts and  sworn affidavits in support of the claims raised in his

25  habeas petition.

26  ////

1    Resolution of the qualified immunity question "will often require examination of the

2    information possessed by the ... official." *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

3    Defendant Robinson admittedly denied all photocopies requested by plaintiff, and defendant

4    Pierce ratified that decision, regardless of the nature of the document or the rules of the court.

5    Moreover, the refusal was obviously contrary to the California Rules of Court as discussed *supra*.

6    A reasonable official in defendants' positions should have foreseen that the result of sumitting an

7    unsupported petition would be to effectively preclude access to the court to have the petition

8    decided on its merits.  Therefore, defendants are not entitled to qualified immunity as to

9    plaintiff's access to the courts claim.

10    For the foregoing reasons, IT IS HEREBY ORDERED that:

11        1.  Plaintiff's October 17, 2006 motion to strike is denied;

12        2.  Plaintiff's October 30, 2006, motion to quash is denied and construed as a reply to

13    defendants' opposition to plaintiff's motion for summary judgment;

14        3.  Plaintiff's October 30, 2006, motion for sanctions is denied.

15    Further, IT IS HEREBY RECOMMENDED that:

16        1.  Defendants' September 26, 2006, motion for summary judgment be denied;

17        2.  Plaintiff's October 17, 2006, motion for summary judgment be granted as to liability;

18    and

19        3.  The matter be remanded to set a schedule for briefing as to damages, including whether

20    there are disputed issues of material fact as to damages.

21    These findings and recommendations are submitted to the United States District Judge

22    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after

23    being served with these findings and recommendations, any party may file written objections with

24    the court and serve a copy on all parties.  Such a document should be captioned "Objections to

25    Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

26    ////

1  specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

2  F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3  Dated:  August 17, 2007.

4

5                                  EDMUND F. BRENNAN
                                   UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26