UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WAYNE SPRINKLE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LEON ROBINSON ,<br><br>　　　　　Defendant. | No.  2:02-cv-1563-JAM-EFB P<br><br><br><br><u>ORDER AND FINDINGS AND RECOMMENDATIONS</u> |

　　　　Petitioner is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  The court has granted partial summary judgment (as to liability) in favor of plaintiff on his claim that defendants violated his right to access the courts when they refused to photocopy exhibits he needed to attach to a habeas petition pending in a California superior court. ECF No. 74.  The court then set the question of damages for trial.  ECF No. 118.  However, at the final pretrial conference, the district judge vacated the trial date and later referred the case back to the assigned magistrate judge "to set a schedule for briefing as to damages, including whether the inclusion of plaintiff's exhibits with his habeas petition would have altered the result of his criminal conviction and sentence, and how that issue relates to plaintiff's claim for damages." ECF Nos. 119 & 120.  Thereafter, findings and recommendations were issued concluding that the question of damages, if any, including the amount, are factual questions that should be

determined by the jury. ECF No. 154. The assigned district judge declined to adopt that recommendation and instead referred the case back for consideration of the impact of *Heck v. Humphrey*, 512 U.S. 477 (1992), on plaintiff's damages claims. ECF No. 157.

The parties have since submitted supplemental briefs on the *Heck* issue. ECF Nos. 161 & 162. After considering those briefs, the following findings and recommendation are entered. As explained below, *Heck* bars any award of damages predicated on continued incarceration since the denial of his state habeas. But plaintiff may nonetheless be awarded nominal damages and any other provable damages as a result of the First Amendment violation itself. The latter damages are not dependent upon or necessarily imply the invalidity of plaintiff's conviction or confinement and therefore are not *Heck*-barred.

**I.    Background**

Plaintiff alleged that in November and December of 1999, defendants violated his First Amendment right of access to the courts by denying him photocopies of documents that he was required to attach as exhibits to a habeas petition he filed in state superior court. ECF No. 1. He claimed that defendants refused to provide the copies and, as a result, the state court ultimately dismissed his petition. *Id.*

The parties filed cross-motions for summary judgment. ECF Nos. 55, 64. On August 20, 2007, the undersigned recommended that defendants' motion for summary judgment be denied and plaintiff's motion for summary judgment be granted as to liability. ECF No. 71. The district judge adopted that recommendation on September 26, 2007. ECF No. 74. The adopted findings included the following relevant facts:

> At all times relevant to this action, plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Mule Creek State Prison (MCSP) in Ione, California. Defendant Robinson was a Senior Librarian and defendant Pierce was a Supervisor of Academic Education and defendant Robinson's supervisor at MCSP.
>
> Plaintiff was tried on multiple felony charges involving sexual offenses against three girls under the age of 14 with whom he was acquainted. The case turned on questions of credibility. Plaintiff was convicted on some charges, acquitted of others, and sentenced to 16 years to life in prison. Plaintiff began serving his prison sentence on October 8, 1996, and was transferred to MCSP on April 15, 1999, where he has since been continuously confined.

2

> On November 5, 1999, plaintiff prepared to challenge his conviction by submitting to Cova, the B-Yard Librarian at MCSP, a state application for a writ of habeas corpus with supporting documents with a request that they be copied. Cova submitted the documents to the Senior Librarian, defendant Robinson, who took it upon himself to decide that the documents were not required under state rules of court and refused to copy them…. The record shows that on December 14, 1999, plaintiff requested three sets of photocopies of 81 pages of documents and two sets of copies of 437 pages of documents, for a total cost of $111.70, together with a signed Trust Account Withdrawal Order. Plaintiff had a copy made of the petition, without his supporting documents, and timely filed it with the Mendocino County Superior Court.
>
> At the time plaintiff filed his petition in superior court, California Rules of Court Rule 56 provided that "a petition that seeks review of a trial court ruling *must be* accompanied by an adequate record, including copies of ... all documents and exhibits submitted to the trial court supporting and opposing petitioner's position," "any other documents or portions of documents submitted to the trial court that are necessary for a complete understanding of the case and the ruling under review," and "a reporter's transcript of the oral proceedings that resulted in the ruling under review." Rule 56, California Rules of Court (emphasis added).
>
> Plaintiff had a copy made of the petition, without his supporting documents, and timely filed it with the Mendocino County Superior Court. On January 5, 2000, the Mendocino County Superior Court filed its decision denying plaintiff's petition for writ of habeas corpus, citing lack of supporting documentation as grounds for denial on as many as three issues.
>
> Plaintiff sought review by submitting, on January 15, 2000, the superior court denial of his writ to the First Appellate District Court for the California Courts of Appeal. Plaintiff included correspondence to that court explaining the deficiency and lack of exhibits, and asked the court for relief and an order to direct the institution of custody to copy the exhibits referred to in the writ petition. On January 25, 2000, the court clerk for the First Appellate District Court returned plaintiff's state habeas petition, requesting plaintiff to attach the missing exhibits that defendants refused to copy, before the court would accept the petition and assign it a docket number. Court records show that plaintiff's habeas petition was denied by the First Appellate District Court on April 13, 2000.

ECF No. 71 at 4-6. The court concluded that, as a consequence of defendants' refusal to copy plaintiff's exhibits, the state superior court denied the petition based in part on a lack of supporting documentation and because plaintiff "made no offer of proof by way of additional evidence." *Id*. at 11-12.[1]

/////

---

[1] Defendant Pierce was defendant Robinson's supervisor. ECF No. 1 at 13. Plaintiff also alleged that defendant Pierce violated his right to access to courts by refusing to copy the exhibits. *Id.*

3

1 As noted, the district judge later referred the case to the undersigned for
2 consideration of the impact of the "favorable-termination rule" of *Heck v. Humphrey*, 512
3 U.S. 477 (1992), on plaintiff's damages claims. ECF No. 157. The parties agree in their
4 supplemental briefs on the issue that plaintiff's compensatory damages will be much
5 greater if it is determined that his state habeas petition would have been granted (and he
6 therefore would have been released from prison) had the exhibits been included. ECF
7 No. 133 at 35; ECF No. 129 at 37. The parties also initially agreed that, regardless of
8 whether the state petition would have succeeded, plaintiff is owed nominal damages,
9 some amount of compensatory damages, and potentially punitive damages. ECF No. 129
10 at 37-44 (Plaintiff's Brief re damages); ECF No. 133 at 29-30 (Defendants' Brief on
11 Damages, stating "On the other hand, if the exhibits would have made no difference in
12 the result, Sprinkle's damages would be limited to: compensatory damages for the
13 emotional distress he suffered merely because he was unable to include the exhibits with
14 his petition; other compensatory damages (for example, any filing fees incurred for his
15 petition); nominal damages; and punitive damages.").

16 However, defendants have since changed their position. They now argue that
17 *Heck* precludes all damages in this action because the action itself is entirely barred. ECF
18 No. 161 at 21. Thus, in light of defendants' most recent position, the remaining issues
19 are: (1) whether *Heck* bars all or any part of this § 1983 action, including whether the
20 state habeas petition would likely have succeeded had the exhibits been attached; (2)
21 whether, if not barred, that issue may be decided by the court rather than the jury; (3)
22 whether plaintiff sustained any other compensatory damages, and the amount thereof,
23 from the deprivation of his right of access to the courts; and (4) the availability of other
24 damages. For the reasons discussed below, the undersigned recommends that the court
25 find that plaintiff's claim that he is owed compensation for continued incarceration due to
26 the loss of a meritorious state habeas case is barred by *Heck*. Therefore, the court need
27 not consider whether plaintiff would have been released had his right of access to the
28 courts not been denied. However, the undersigned also recommends that the district

4

judge conclude that the defendants' interference with plaintiff's right of access to the court would permit a jury to award plaintiff at least nominal damages for the deprivation of his First Amendment rights, and potentially to some measure of compensatory and punitive damages depending on proof at trial. The amount of any such damages is a question of fact that must be determined by a jury.

**II.     The Application of *Heck* to Certain § 1983 Access-to-Courts Claims**

A portion of plaintiff's damages claims in this action rests on whether or not he may be compensated for being unlawfully incarcerated for a number of years because, if defendants had allowed him to copy his attachments, his state petition for writ of habeas corpus would have been granted. As noted by the district judge, this aspect of plaintiff's case raises an issue under *Heck*. As discussed below, plaintiff cannot seek damages for wrongful incarceration. He can, however, seek other damages that are discussed herein.

**A. The *Heck* Rule**

Two statutes provide a federal forum to prisoners who wish to challenge unconstitutional conduct by state officials. One such statute is the Civil Rights Act of 1871, which provides, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. The other is the federal habeas corpus statute, which provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). While these statutes facially overlap, "they differ in their scope and operation." *Heck*, 512 U.S. at 480. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Additionally, to

seek a habeas writ in federal court, a prisoner must first exhaust his available state remedies (usually, by seeking habeas relief in state court). 28 U.S.C. § 2254(b).

Section 1983, on the other hand, provides a damages remedy to a prisoner who has suffered a violation of his federal rights (which is unavailable in habeas) and requires no exhaustion of state court remedies. Because of the statute's broad language, a prisoner who believes that her incarceration violates the Constitution could conceivably bring a § 1983 action for damages and/or an injunction without first presenting the claim to the state courts, thus circumventing the exhaustion requirement of § 2254(b).

The U.S. Supreme Court first addressed this problem at the intersection of the two statutes in *Preiser v. Rodriguez*. There, several state prisoners alleged that they had been unconstitutionally deprived of good-conduct credits in prison disciplinary proceedings. 411 U.S. at 476. They sought injunctive relief to compel restoration of the credits, which would have shortened their sentences and resulted in their immediate release from prison. *Id.* The Court held that such an action, which attacks the duration of confinement, must be pursued in habeas so that prisoners could not circumvent the habeas statute's exhaustion requirement, which serves the important goal of allowing state courts the first opportunity to correct alleged errors in the state's administration of justice. *Id.* at 490-91. The Court did not have an opportunity in *Preiser* to rule on whether a prisoner who alleged that his confinement was unlawful could seek damages under § 1983 (rather than an injunction), but suggested that such an action would be cognizable. *Id.* at 493-94.

That suggestion was rejected in *Heck v. Humphrey*. *Heck* was a § 1983 action in which a state prisoner sought damages for alleged infirmities in the investigation leading to his arrest, the alleged destruction of exculpatory evidence, and the use of an allegedly unlawful voice identification procedure at his criminal trial. 512 U.S. at 478-79. The plaintiff did not seek injunctive relief compelling his release. *Id.* Nevertheless, the Supreme Court concluded that such an action could not be pursued because a judgment in the plaintiff's favor would necessarily impugn his criminal conviction. *Id.* at 486-90. Instead, the Court adopted what has come to be known as the "favorable-termination rule":

6

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 22 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87 (footnotes omitted, emphasis in original). In sum, a plaintiff who wishes to obtain damages under § 1983 for unconstitutional state action that, if found unlawful, would invalidate the plaintiff's conviction or confinement must first obtain a favorable termination of that conviction or sentence, usually through a habeas proceeding.

However, as discussed below, there are costs and damages unrelated to wrongful incarceration that may be sought in an access-to-courts claim.

### B. *Heck* Applied in Access-to-Courts Cases

In most cases, the application of *Heck's* favorable-termination rule is straightforward. However, access to courts claims such as this one – in which the plaintiff claims he was deprived of an opportunity to challenge his conviction or sentence because the defendant blocked him from doing so – present difficult questions about how that rule applies. In these cases, the plaintiff does not challenge conduct connected with his trial or sentence (in *Heck*, the plaintiff challenged the legality of his arrest), but instead challenges conduct by a prison official which allegedly impeded the plaintiff's ability to mount such a collateral attack on the conviction or sentence. In cases like *Heck,* the alleged wrong can be challenged and perhaps (at least partially) corrected in the habeas action. In cases where access to the court to even present the challenge was impeded, defendants' misconduct would not be adjudicated in the habeas action. Understandably, courts have not responded uniformly to such cases, and no clear rule exists in this circuit.

Federal court opinions addressing access-to-courts claims in which the underlying case challenged the duration of confinement are few. Most courts follow the approach generated by

the Seventh Circuit in a line of cases beginning with *Nance v. Vieregge*, 147 F.3d 589 (7th Cir. 1998). In that case, the plaintiff had been pursuing a motion to withdraw his guilty plea, which was denied after a prison official caused the loss of the plaintiff's legal papers related to the motion. *Id.* at 590, 591. The plaintiff alleged that the official had violated his right to access the courts by losing the papers. *Id.*

The court upheld the dismissal of the complaint, finding that the action was barred by *Heck*. *Id.* at 591. It first noted that, under *Lewis v. Casey*, 518 U.S. 343 (1996), a plaintiff seeking to establish an access-to-courts claim must prove that the defendant's conduct caused the plaintiff injury. *Nance,* 147 F.3d at 591. According to the *Nance* court, where the underlying case is an attack on the conviction or sentence and "if the injury in question is losing the underlying case," *Heck* bars the action until the conviction or sentence is invalidated, unless the plaintiff seeks only an injunction to restore the access to courts. *Id.*

The *Nance* court's reading of *Heck* in combination with *Lewis v. Casey* necessitated a partial extension of *Lewis*, requiring more of plaintiffs in certain access-to-courts cases than in others. This extension was made necessary by the court's definition of what constitutes "actual injury" in such a case. In articulating the "actual injury" component of an access-to-courts claim, the U.S. Supreme Court in *Lewis* did not require that the plaintiff establish that the underlying case was meritorious; i.e., that he was injured because he was prevented from litigating a winning case. Instead, the Court stated that the plaintiff must demonstrate only that the deprivation of access "hindered his efforts to pursue a legal claim" or "that a nonfrivolous legal claim [has] been frustrated or [is] being impeded." 518 U.S. 343, 351, 352-53 (1996). *Nance*, however, assumed that the measure of "actual injury" in a case where the underlying case was a collateral attack on a conviction is only the cost of continued incarceration; that is, the cost of having been deprived of a meritorious collateral attack. This assumption requires plaintiffs in such cases to prove that their underlying case was meritorious (rather than was simply nonfrivolous, as *Lewis* held), thus entitling the plaintiff to damages for wrongful incarceration. Because a determination of the merits of the conviction is the province of habeas, such a claim cannot proceed unless the plaintiff has previously obtained a favorable termination of the conviction. *Nance*, 147 F.3d at 591. The

1  court noted that an exception to the *Heck* rule may apply if the plaintiff could show that it was
2  impossible to seek collateral relief. 147 F.3d at 591. Thus, under *Nance*, a plaintiff denied access
3  to courts in an underlying case challenging the *fact* of his confinement must demonstrate that the
4  underlying case was meritorious (by obtaining a favorable termination) to show actual injury, but
5  a plaintiff denied access to courts in a case challenging the *conditions* of his confinement need
6  only show that the underlying case was colorable.

7  The Seventh Circuit rationalized this disparity in *Hoard v. Reddy*, 175 F.3d 531 (7th Cir.
8  1999). There, the plaintiff alleged that prison officials had interfered with his access to courts in a
9  state-court collateral attack on his conviction. *Id.* at 532. The court noted the "paradox" created
10 by *Nance*:

> A claim for damages in respect of an unconstitutional denial of access to the courts, unlike a claim of damages for an unconstitutional conviction, does not require the plaintiff to prove that, had it not been for the denial, he would have won his case. . . . The question arises how this conclusion can be squared with *Heck*, or with the ruling in *Nance* that only prospective relief is available in a prisoner's suit complaining of denial of access to the courts unless he has succeeded in getting his conviction annulled, since otherwise an effort to obtain damages would be blocked by *Heck*. That ruling seems to exclude a damages claim by a prisoner who has merely a colorable case.

17 *Id.* at 533. The court explicated that this "contradiction . . . is only apparent" because a plaintiff
18 whose access has been thwarted in an underlying habeas case has lost nothing of monetizable
19 value if his conviction is valid, whereas a plaintiff who has been thwarted in an underlying case
20 challenging prison conditions has lost the settlement value of the case. *Id.* at 532-33. The court
21 noted that a plaintiff who has had his collateral attack blocked by state officials may nevertheless
22 seek an injunction in a federal § 1983 action to remove the blockage. *Id.* at 533. The court did
23 not discuss whether the lost opportunity to litigate a colorable habeas claim might have value
24 regardless of the habeas claim's actual merit; that is, the potential for damages that are not tied to
25 the merit of the underlying case (such as nominal damages, costs of litigating the underlying case,
26 or punitive damages).

27 These issues were more squarely presented to the circuit in *Burd v. Sessler*, 702 F.3d 429
28 (7th Cir. 2012). There, the plaintiff sought damages, alleging that prison officials had deprived

9

him of access to the courts in his attempt to withdraw his guilty plea. *Id.* at 430. The district court dismissed the case, concluding that it was barred by *Heck*. *Id.* at 431. On appeal, the plaintiff argued that *Heck* did not apply, "because an award of damages for having been denied an opportunity [to attack his guilty plea] would not necessarily imply that his conviction or sentence is invalid." *Id.* at 432. The plaintiff argued that, under *Lewis*, he needed only to show that the underlying attack on his guilty plea was non-frivolous. *Id.* at 433. The court did not squarely answer these arguments. Instead, after lengthy block-quotes taken from *Hoard* and *Nance*, the court concluded that these cases controlled the outcome and that the dismissal was therefore an appropriate application of *Heck*. *Id.* at 433-35. The court clarified the exception noted in its earlier cases, holding that the *Heck* rule bars cases in which a plaintiff's damages claim would necessarily call into question the validity of the plaintiff's conviction or sentence only where the plaintiff could have pursued collateral relief but failed to do so in a timely manner. *Id.* at 436. Notably, the court declined to address the plaintiff's argument that he was entitled to nominal and possibly punitive damages because the plaintiff had not sought such relief in his complaint or presented an argument supporting such damages. *Id.* at 435 n.2.

Many district courts have followed the Seventh Circuit's approach. *Delarm v. Growe*, No. 2:15-cv-2258 KJM KJN P, 2016 U.S. Dist. LEXIS 46705 (E.D. Cal. Apr. 29, 2016); *Koch v. Jester*, No. 6:12-CV-00613-BR, 2014 U.S. Dist. LEXIS 104405 (D. Or. July 31, 2014); *Gregory v. County of San Diego*, No. 13cv1016-WQH-JMA, 2013 U.S. Dist. LEXIS 149024 (S.D. Cal. Oct. 15, 2013); *Collins v. Corr. Corp. of Am.*, No. 3:10-cv-00697-RCJ-V, 2011 U.S. Dist. LEXIS 25118 (D. Nev. Jan 26, 2011); *Cole v. Sisto*, No. S-09-0364 KJM P, 2009 U.S. Dist. LEXIS 76110 (E.D. Cal. July 24, 2009); *McDonald v. Brown*, No. 03 C 4568, 2008 U.S. Dist. LEXIS 22305 (N.D. Ill. Mar. 18, 2008); *Brown v. Johns*, No. 2:05-cv-43, 2007 U.S. Dist. LEXIS 60135 (W.D. Mich. Aug. 16, 2007); *Holmes v. Grant*, No. 03 Civ. 3426 (RJH) (RLE), 2006 U.S. Dist. LEXIS 15743 (S.D.N.Y. Mar. 31, 2006); *Adams v. Pucinski*, No. No. 02 C 1230, 2002 U.S. Dist. LEXIS 21679 (N.D. Ill. Nov. 5, 2002). These cases simply relate the analysis contained in the Seventh Circuit opinions summarized above and follow that analysis. For example, in *Koch*, the plaintiff alleged that his ability to file a collateral attack on his conviction was unconstitutionally

1  hampered by certain rules in effect at his institution of incarceration, the Oregon Youth Authority.

2  2014 U.S. Dist. LEXIS 104405, at *5-6.  The district court noted that "the Ninth Circuit has not

3  addressed the intersection of the First Amendment and *Heck* as they apply to an inmate's claim

4  for denial of access to courts." *Id.* at *9-10.  The court then summarized the Seventh Circuit's

5  cases on the issue and stated, "Absent precedent to the contrary, the Court concludes the

6  reasoning in *Burd, Hoard*, and the district court cases in the Ninth Circuit [following the Seventh

7  Circuit's approach] is inevitably persuasive, and, therefore, the 'favorable termination'

8  requirement of *Heck* applies under these circumstances." *Id.* at *14.

### C. Harmonizing *Lewis* and *Heck*

The cases discussed above highlight the complex relationship between *Heck* and *Lewis* in access to courts claims that challenge the obstruction of a habeas case (or similar attack on the fact or duration of confinement).  As noted, the U.S. Supreme Court in *Lewis* specifically did *not* require that the plaintiff establish that the underlying case was meritorious; i.e., that the plaintiff was injured because he was prevented from litigating a winning case.  Instead, *Lewis* instructs that the plaintiff must demonstrate only that the deprivation of access "hindered his efforts to pursue a legal claim" or "that a nonfrivolous legal claim [has] been frustrated or [is] being impeded." 518 U.S. at 351, 352-53 (1996).  The *Nance* approach can undermine this principle by effectively requiring a plaintiff to prove that the underlying but obstructed habeas petition would have been successful (rather than merely non-frivolous).  Thus, any form of monetary redress for the obstruction of access (including nominal damages), would be precluded even though such redress does not implicate the plaintiff's conviction or sentence.  Such a result is contrary to *Lewis*.  Fortunately, *Heck* and *Lewis* can be harmonized under an analytical framework that gives effect to both cases when addressing cases that allege obstruction of an underlying habeas.  The key to doing so is a focus on the "injury in question."  *See Nance*, 147 F.3d at 591.

To make out a claim of denial of access to courts, a plaintiff must show: (1) the loss of a nonfrivolous underlying claim (otherwise known as "actual injury"); (2) official conduct frustrating the litigation of that claim; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  *See Christopher v. Harbury*, 536 U.S. 403, 413-14

(2002). Because the plaintiff need only show that the underlying case was nonfrivolous, proof of actual injury does not necessarily imply that plaintiff would have won the underlying case. *See Heck*, 512 U.S. at 487; *Lueck*, 262 F. Supp. 2d at 699 (noting that, "[u]nlike the civil rights claims at issue in *Heck*, plaintiff's access claim does not necessarily imply the invalidity of his conviction or sentence.") (internal citation and quotation marks omitted). Thus, a plaintiff alleging that his collateral attack was unconstitutionally blocked can establish each element without necessarily implying the invalidity of his incarceration.

The *Heck* issue arises only where a plaintiff claims that, but for the defendant's unlawful blocking of his access to the courts, his collateral attack would have succeeded, he would have been released, and he is therefore owed damages to compensate for the wrongful incarceration. Such damages imply the invalidity of the plaintiff's incarceration and are therefore barred by the favorable-termination rule. *See Heck,* 512 U.S. at 482 (rejecting the plaintiff's argument that prior cases sanctioned the recovery of damages for lost good-time credits) & 486-87 (holding that the plaintiff must show favorable termination before he can "recover damages for allegedly unconstitutional conviction or imprisonment."). Not all damages in cases such as this one call into question the underlying conviction, however. There exist other "injuries in fact" that may be addressed by the court without running afoul of *Heck*.

*Heck* itself supports separating out problematic damages in applying the favorable-termination rule. In stating that, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed," the Court provided the following example:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction as unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)."

512 U.S. at 487 & n.7.


Case 2:02-cv-01563-JAM-EFB   Document 166   Filed 03/22/17   Page 13 of 17

This example clearly contemplates allowing a substantive claim that does not necessarily imply the invalidity of the conviction or sentence to proceed, even though a portion of the claimed damages may be barred by *Heck*.

Cases like the instant one present exactly such a situation – plaintiff's substantive claim that defendants obstructed his access to the court in his state habeas petition does not necessarily impugn his conviction, but a claim that he is owed compensation for his incarceration because the habeas would have succeeded does. Yet, in such cases, a plaintiff may obtain other damages that do not impugn the conviction. For example, some compensatory damages are totally unrelated to the validity of a plaintiff's incarceration; e.g., the costs of preparing and filing the state petition. *Phillips v. Hust*, 477 F.3d 1070, 1081-82 (9th Cir. 2007), *vacated on other grounds* by *Hust v. Phillips*, 555 U.S. 1150 (2009); *McCullough v. Johnson*, No. 7:05-CV-058-R, 2007 U.S. Dist. LEXIS 84072, at *12-15 (N.D. Tex. Nov. 14, 2007) (assessing compensatory damages for blocking the plaintiff's access to a state collateral attack valued by time spent preparing the state claims). Even if the plaintiff did not suffer any such compensatory damages, a jury may award nominal damages, which also do not imply that he is wrongfully incarcerated. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986) (nominal damages "are the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."). In addition, the plaintiff may be able to establish entitlement to punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1971) (punitive damages may be awarded in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); *see Arizona v. ASARCO LLC*, 773 F.3d 1050, 1058 (9th Cir. 2014) (punitive damages may be awarded even if only nominal, and no compensatory, damages have been granted).

The Third Circuit followed this approach in *Prater v. City of Philadelphia*, 542 F. App'x 135 (3d Cir. 2013). There, the plaintiff alleged that that his Sixth Amendment right to the assistance of counsel was violated. *Id.* at 137. The Court of Appeals stated that, under *Heck*, plaintiff could not seek damages for the violation of his right to counsel if the damages remedy would necessarily imply the invalidity of his conviction. *Id.* at 138. The court allowed the claim


13

to proceed, however, "to the extent [plaintiff] can show that his Sixth Amendment claim does *not* imply the invalidity of his conviction," remanding the case to the district court for consideration of whether nominal and/or punitive damages were warranted. *Id.*

Harmonizing *Lewis* and *Heck* in this manner avoids treating the substantive elements of access-to-courts cases differently depending on the nature of the underlying case or whether monetary damages are sought. In access cases in which either (1) the underlying case did not attack the conviction or sentence or (2) the underlying case presented such a challenge but the plaintiff seeks only declaratory or injunctive relief and no damages, courts have allowed the cases to go forward without a prior favorable termination, because the *Heck* rule really only comes into play in determining whether the plaintiff may get damages for being incarcerated unlawfully. *E.g., Brown v. Johns*, No. 2:05-cv-43, 2007 U.S. Dist. LEXIS 60135, at *6 (W.D. Mich. Aug. 16, 2007); *see also Hoard*, 175 F.3d at 533 (noting that a plaintiff whose habeas petition is being obstructed by state official may bring an access-to-courts case under § 1983 to obtain an injunction against the official). Yet, in cases such as this one – where the plaintiff seeks damages for the obstruction of a habeas petition or similar action – those same courts have effectively applied a heightened actual injury requirement (stating that the plaintiff cannot show the injury element without showing that the underlying case would have succeeded, which raises the *Heck* bar). *See, e.g., Brown*, 2007 U.S. Dist. LEXIS 60135, at *11-12 (plaintiff could not "meet his burden of pleading an actual injury sufficient to state a claim for money damages under 42 U.S.C. § 1983 without alleging and showing that his underlying conviction has been reversed or otherwise invalidated" but plaintiff could seek "declaratory and injunctive relief based on an alleged violation of his constitutional right of access to the courts" without such a showing). It is analytically clearer to apply the same substantive elements to all access-to-courts claims and address the *Heck* issue where it really arises – in plaintiff's assertion that he is owed damages for wrongful incarceration. An order barring such damages but allowing the remainder of the claim to proceed properly gives effect to both *Lewis* and *Heck*.

In addition, by harmonizing *Heck* and *Lewis* in this manner, the court recognizes a fundamental difference between *Heck* and its related U.S. Supreme Court cases and cases such as

this one.  In *Heck*-barred claims, the plaintiff's substantive legal claims attack their conviction or confinement.  *Preiser*, 411 U.S. at 476 (alleging deprivation of good-time credits without due process in a prison disciplinary hearing); *Heck*, 512 U.S. at 479 (alleging unconstitutional arrest, destruction of exculpatory evidence, and use of an illegal voice identification procedure at trial); *Edwards v. Balisok*, 520 U.S. 641, 644-45 (1997) (alleging unconstitutional procedures at a prison disciplinary hearing).  In *Preiser* and *Edwards*, a ruling that any of the plaintiffs had been deprived of due process in his disciplinary hearing would have necessarily invalidated the results of the hearing; i.e., the deprivation of good-time and the attendant lengthening of the prisoner's sentence.  *Preiser*, 411 U.S. at 487; *Edwards*, 520 U.S. at 646.  In *Heck*, a ruling that the plaintiff's constitutional rights had been violated would have invalidated his trial and conviction.  512 U.S. at 490.  This critical aspect of the cases caused the Court to adopt the favorable-termination rule so that prisoners could not circumvent the habeas statute's exhaustion requirements by challenging their convictions or sentences through § 1983.  *Heck*, 512 U.S. at 485-86; *Preiser*, 411 U.S. at 489-91.  In access-to-courts cases such as this one, however, plaintiffs are not trying to circumvent habeas requirements by challenging their convictions or sentences in a § 1983 action.  Rather, these plaintiffs are challenging the misconduct of prison officials who have blocked their attempts to pursue habeas in the first place.  *Lueck v. Wathen*, 262 F. Supp. 2d 690, 699 (N.D. Tex. 2003).  The focus, then, is on loss of the opportunity to be heard on a non-frivolous petition, regardless of whether the petition would have prevailed.

Importantly, this approach honors *Heck* by disallowing the portion of the case that implicates the fact or duration of confinement while also honoring *Lewis*'s holding that the "actual injury" component of an access-to-courts claim does *not* require the plaintiff to show that she would have won the underlying case.  518 U.S. at 351.  In *Lewis*, the Court provided these examples of actual injury which illustrate that this element does not require the plaintiff to show the underlying case would have won:

> [To show actual injury from an inadequate law library, the inmate must] demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal

15

> assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* at 351. The Court's language makes clear that the underlying action that was frustrated by the official's conduct need only be "arguable" or, in other words, "nonfrivolous." *Id.* at 352-53 (describing the "actual injury" as a showing that "a nonfrivolous legal claim had been frustrated or was being impeded."); *see also Allen v. Sakai*, 48 F.3d 1082, 1085 (9th Cir. 1994) (to show actual injury, a plaintiff "need not show, ex post, that he would have been successful on the merits had his claim been considered."). As the Ninth Circuit has recognized, requiring a plaintiff to show that the underlying case was meritorious "would permit prison officials to substitute their judgment for the courts' and to interfere with a prisoner's right to court access on the chance that the prisoner's claim" would ultimately fail. *Allen*, 48 F.3d at 1085.

### III.    Order and Recommendation

For the reasons set forth above, the findings and recommendations issued on August 6, 2014 (contained in ECF No. 154) are hereby VACATED. Further, it is RECOMMENDED that plaintiff be allowed to proceed to a jury trial[2] on his claim for any losses that are unrelated to alleged wrongful incarceration; for example, compensation for time spent preparing the petition and the costs of filing it. *Philips*, 477 F.3d at 1082 ("Awarding the costs of the underlying suit recognizes that [plaintiff] incurred those costs in the expectation that he would be able to exercise those rights and press his legal contentions to the full extent permitted by law, and even if he was ultimately unsuccessful."); *McCullough*, 2007 U.S. Dist. LEXIS 84072, at *13-14 (measuring damages by hours worked by the plaintiff to prepare the underlying petition).[3] He may also seek

---

[2] Plaintiffs who seek damages under § 1983 for alleged violations of their federal rights are entitled by the Seventh Amendment to the U.S. Constitution to have their claims determined by a jury. *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 709-10 (1999). Because plaintiff seeks the legal relief of monetary damages for the violation of a constitutional right, he is entitled to a jury trial, which he has requested. *See id.*; ECF No. 30 at 1.

[3] Awarding plaintiff a measure of damages for time spent preparing the underlying petition is not to be confused with a grant of attorney fees for the state habeas action. Fees may not be granted to a pro se litigant. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). But a jury can place some value on plaintiff's wasted efforts and time to press his ultimately obstructed petition because that loss was generated not in litigating this case but in the underlying action.

16

an award of nominal damages if he cannot establish that he suffered any compensatory damages. Further, he can attempt to prove entitlement to punitive damages.  However, for the reasons set forth above, it is FURTHER RECOMMENDED that the court disallow any damages claimed for wrongful incarceration.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 22, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE